UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| CHERYL A. FELLERS, | |
| Plaintiff, | CIVIL COMPLAINT |
| v. | CASE NO. |
| CONSUMER LAW RELIEF, LLC d/b/a HELBING LAW GROUP, LLC, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT

Now comes CHERYL A. FELLERS ("Plaintiff"), by and through the undersigned, complaining as to the conduct of CONSUMER LAW RELIEF, LLC d/b/a HELBING LAW GROUP, LLC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.*, the Tennessee Credit Services Businesses Act ("TCSBA") under Tenn. Code § 47-18-1001 *et seq.*, and the Tennessee Consumer Protection Act ("TCPA") under Tenn. Code § 47-18-104 *et seq.*, stemming from Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Eastern District of Tennessee and a substantial portion of the events or omissions giving rise to the claims occurred within the Eastern District of Tennessee.

### PARTIES

4. Plaintiff is a consumer over 18 years of age residing in Johnson City, Tennessee.

5. Defendant is a credit repair organization that offers its clients both legal and non-legal services designed to resolve their debt issues and improve their credit history, including working towards actively settling debts for such consumers. Defendant is a professional limited liability company organized under the laws of the state of Pennsylvania with its principal place of business located at 1328 2nd Avenue, Berwick, Pennsylvania 18603.

6. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSES OF ACTION

7. In approximately the fall of 2019, Plaintiff was wanting to address various debts that she had accumulated, and so began searching for credit repair and debt consolidation programs to assist in her efforts.

8. Plaintiff subsequently came upon Defendant's advertisement which promised consumers the ability to improve their credit history by using Defendant's services to consolidate and resolve outstanding debts.

9. Plaintiff spoke with Defendant, and Defendant explained the nature of its services and how Plaintiff would enroll a number of debts in Defendant's program, make monthly payments to Defendant, at which point Defendant would begin working on resolving Plaintiff's debts with the

creditors or those seeking collection of the enrolled debts, and would similarly defend Plaintiff in the event of any sort of lawsuit against Plaintiff in connection with the enrolled debts.

10. Defendant further affirmatively represented that, if Plaintiff maintained certain monthly payments over a period of time, that all of her enrolled debt would be resolved and that Defendant would defend her in connection with any lawsuits filed in connection with the enrolled debts.

11. As a result of Defendant's representations, Plaintiff wanted to address all of her outstanding debts in Defendant's program, and accordingly agreed to use Defendant's services and enrolled over $11,201.00 of her outstanding debts with Defendant.

12. Plaintiff was to make monthly payments of approximately $316.32 to Defendant over a period of 24 months, at which point Defendant advised all of her debts would be resolved.

13. Plaintiff faithfully made her payments to Defendant throughout the life of the parties' agreement, and her final payment was made on or around December 5, 2021.

14. In total, Plaintiff paid Defendant $7,591.68; however, from these payments, Defendant only settled $4,110 of the *principal* amount Plaintiff enrolled with Defendant.

15. The two debts Defendant failed to resolve – her Discover Bank debt and Capital One debts – represented the highest balances.

16. The Capital One obligation, which Defendant affirmatively represented would be resolved by the end of the program, has since been placed in collections and Plaintiff is dealing with those efforts.

17. Furthermore, although Defendant represented to Plaintiff that it would represent her in connection with any litigation, while Plaintiff was making her payments to Defendant, Plaintiff was sued in connection with the Discover obligation.

3

18. However, rather than represent Plaintiff in connection with such litigation, Defendant allowed that obligation to be reduced to judgment, despite charging Plaintiff for legal fees it was purportedly performing.

19. Plaintiff pressed Defendant on how they could allow the Discover debt to be reduced to judgment, at which point Defendant falsely stated that Plaintiff did not enroll the Discover debt in their program.

20. Defendant similarly deceptively refused to provide Plaintiff with further information and documentation regarding Defendant's conduct and debt settlement efforts made on behalf of Plaintiff.

21. Plaintiff suffered significant emotional distress stemming from her dealings with Defendant, as she had paid Defendant thousands of dollars without receiving anything substantially close to the services Defendant represented it would provide at the time Plaintiff agreed to utilize Defendant's services.

22. Plaintiff has suffered further concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient credit repair services, being subjected to collection lawsuits that should not have come about, denial of the benefit of his bargain with Defendant, as well as numerous violations of his state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

23. Plaintiff repeats and realleges paragraphs 1 through 22 as though fully set forth herein.

24. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

4

25. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

   a. **Violations of CROA § 1679b(a)**

26. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

27. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. Defendant affirmatively represented to Plaintiff that it would be able to resolve her obligations if she maintained her monthly payments per the parties' agreed schedule. Plaintiff made her payments faithfully; however, Defendant failed to deliver the promised credit repair services. As such, Defendant's affirmative representations were false and misleading. Upon information and belief, Defendant's pattern and practice is to overpromise consumers the result they want in order to induce such consumer to sign up, despite knowing their inability to follow through on their representations.

5

Case 2:22-cv-00029-CEA-CRW   Document 1   Filed 03/11/22   Page 5 of 12   PageID #: 5

28. Defendant further violated the above provisions of the CROA through its false and misleading representations as to the legal services it was providing Plaintiff. Defendant advised that it would represent Plaintiff in any litigation filed in connection with enrolled debt. However, it failed to do so.

29. Additionally, Defendant violated the above provisions of the CROA when it falsely represented to Plaintiff that she did not enroll the Discover debt in Defendant's program. Defendant falsely represented the Discover obligation's status, and subsequently refused to provide Plaintiff further information, because it knew it woefully failed to honor the parties' agreement with regard to such obligation.

### b. Violations of CROA § 1679b(b)

30. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

31. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendant's practice of charging a retainer for services upfront, before such services is performed, is inherently in violation of the CROA. Further, although Defendant was charging Plaintiff for purported "legal" services, it never actually provided such services, and certainly did not perform them prior to charging Plaintiff. Defendant similarly withheld sums for credit repair services it never actually performed. Plaintiff paid Defendant substantially more than the amount of debt it ended up settling for Plaintiff, further illustrating the extent to which Defendant has improperly maintained fees for services it never actually performed.

### c. Violation of CROA § 1679c

32. The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumer. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

33. Defendant violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

### d. Violation of CROA §§ 1679d(4) & 1679e

34. The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" Under § 1679e, a CRO must provide a consumer a separate notice of a consumer's cancellation right.

35. Defendant violated 15 U.S.C. §§ 1679d(4) & 1679e through its failure to provide the disclosure required by the CROA both in the contract between the parties, as well as in any other separate form.

### e. Violation of CROA § 1679f(b)

36. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

37. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded him under the CROA. Defendant's contract attempts to justify its retention of payments prior to performing services, which is tantamount to Plaintiff waiving the protection afforded by § 1679b(b).

38. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, CHERYL A. FELLERS, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE TENNESSEE CREDIT SERVICES BUSINESSES ACT

39. Plaintiff restates and realleges paragraphs 1 through 38 as though fully set forth herein.

40. Plaintiff is a "consumer" as defined by Tenn. Code § 47-18-1002(3).

41. Defendant is a "credit services business" as defined by Tenn. Code § 47-18-1002(6).

### a. Violations of Tenn. Code § 47-18-1003

42. The TCSBA, pursuant to Tenn. Code § 47-18-1003, outlines a list a conduct which CSBs are prohibited from engaging.

43. Pursuant to § 47-18-1003(1), a CSB cannot "[c]harge or receive any money or other valuable consideration prior to full and complete performance of the services that the credit services business has agreed to perform for or on behalf of the consumer. … 'Full and complete performane' means fulfillment of all items listed in the contract and other solicitations or communications to consumers."

44. Defendant violated the above provision of the TCSBA in much the same way it violated 15 U.S.C. § 1679b(b).

45. Pursuant to § 47-18-1003(4), a CSB cannot "[m]ake or use any untrue or misleading representation in the offer or sale of the services of a credit repair business or engage, directly or indirectly, in any act, practice, or course of business which operates or would operate as a fraud or deception upon any person in connection with the offer or sale of the services of a credit services business."

46. Defendant violated the above provision of the TCSBA in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

47. Tenn. Code § 47-18-1003(10) provides that it is a violation of the TCSBA to violate the federal Consumer Credit Protection Act, which includes the CROA.

48. Defendant thus violated the TCSBA by virtue of its numerous violations of the CROA.

### b. Violations of Tenn. Code § 47-18-1004(a)

49. The TCBSA, under § 47-18-1004(a), provides that, prior to executing a contract with a consumer, a CSB must provide that consumer with a disclosure of rights outlined in § 47-18-1005.

50. Defendant violated this provision of the TCSBA by failing to provide Plaintiff a copy of the disclosures prior to executing the contract with Plaintiff.

### c. Violations of Tenn. Code § 47-18-1006

51. The TCSBA, under § 47-18-1006, provides that a CSB must include, in its contract with a consumer and in a separate form, a conspicuous disclosure of the right to cancel a given contract.

52. Defendant violated this provision of the TCSBA in much the same way it failed to comply with the CROA's requirements regarding notification of the right to cancel.

### d. Violations of Tenn. Code § 47-18-1007

53. Tenn. Code. § 47-18-1007 is largely similar to 15 U.S.C. § 1679f, as it provides that a breach of a contract constitutes a violation of the TCSBA; a noncompliant contract is void and unenforceable, and any waiver or attempt to attain a consumer's waiver of rights afforded constitutes a violation.

54. Defendant violated § 47-18-1007 in much the same way it violated 15 U.S.C. § 1679f. Defendant failed to honor the terms of the parties agreement, and attempted to attain Plaintiff's waiver of rights under the statute.

WHEREFORE, Plaintiff, CHERYL A. FELLERS, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Tenn. Code § 47-18-1008(a)(1);

c. Awarding Plaintiff punitive damages pursuant to Tenn. Code § 47-18-1008(a)(2);

d. Enjoin Defendant from further violations of law pursuant to,

e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tenn. Code § 47-18-1010(a); and,

f.  Awarding any other relief the Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT

55. Plaintiff restates and realleges paragraphs 1 through 54 as though fully set forth herein.

56. At all relevant times, Defendant's conduct was in connection with "trade," "commerce," and a "consumer transaction" as defined by Tenn. Code § 47-18-103(20). *Franks v Sykes,* 600 S.W.3d 908 (Tenn. 2020).

57. The TCPA provides that, "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices." Tenn. Code § 47-18-104(a).

58. Further, the TCSBA provides that a violation of it constitutes a violation of the TCPA. Tenn. Code. § 47-18-1010(a).

59. As outlined above, Defendant engaged in a series of deceptive and unfair acts in relation to Plaintiff, and in doing so violated the various consumer protection laws of Tennessee applicable to such conduct.

WHEREFORE, Plaintiff, CHERYL A. FELLERS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.  Awarding Plaintiff actual damages pursuant to Tenn. Code § 47-18-109(a)(1);

c.  Award Plaintiff punitive damages pursuant to Tenn. Code § 47-18-109(3);

d.  Award Plaintiff reasonable attorney's fees and costs pursuant to Tenn. Code § 47-18-103(e)(1);

e.  Enjoining Defendant from contacting Plaintiff pursuant to Tenn. Code § 47-18-103(b); and,

f.  Awarding any other relief as the Honorable Court deems just and appropriate.

Dated: March 8, 2022                                Respectfully submitted,

<span style="margin-left: 4em;">s/ Nathan C. Volheim</span>
Nathan C. Volheim
Sulaiman Law Group, Ltd.
*PHV Application Pending*
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
Phone: (630) 568-3056
Facsimile: (630) 575-8188
nvolheim@sulaimanlaw.com